UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **LAKE CHARLES PILOTS INC** | **CASE NO. 2:21-CV-03152** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **LANDMARK AMERICAN INSURANCE CO** | **MAGISTRATE JUDGE KAY** |

### MEMORANDUM RULING

Before the Court is "Landmark American Insurance Company's Motion for Partial Summary Judgment on the Issue of Replacement Cost Value and Increased Cost of Construction Coverage" (Doc. 28). Defendant Landmark American Insurance Company ("Landmark") maintains that Plaintiff Lake Charles Pilots, Inc. ("LK Pilots") is not entitled to Replacement Cost Value ("RCV") or Increased cost of Construction ("Cost Upgrade") coverage for certain structures that were allegedly damaged by Hurricanes Laura and Delta.

### FACTUAL STATEMENT

LC Pilots is the owner of a commercial business, including three elevated, single-story wood-framed residential structures with 20' timber pilings, an elevated, single-story wood framed generator platform with a timber piling foundation, and a small, grade-level storage shed (collectively comprising the "Insured Property"), which allegedly suffered certain damages in two separate weather events, the first occurring on or about August 27, 2020, associated with Hurricane Laura, and the second occurring on or about October 9, 2020, associated with Hurricane Delta. During the relevant time period, Landmark insured the Insured Property against perils including wind, hail and water.

The Insured Property is located on Monkey Island, a 246-acre site on Louisiana's Calcasieu Ship Channel situated 2.5 miles from the Gulf of Mexico. The Insured Property, accessible only by boat, is used as sleeping quarters for pilots and crew members who navigate the shipping channels around Southwest Louisiana.[1]

The Policy provides, in pertinent part, as follows:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

\*\*\*

**3. Replacement Cost**

a. Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

\*\*\*

d. We will not pay on a replacement cost basis for any loss or damage:

(1) Until the lost or damaged property is actually repaired or replaced; and

(2) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

\*\*\*

e. We will not pay more for loss or damage on a replacement cost basis than the least of (1), (2), or (3) . . .

(1) The Limit of Insurance applicable to the lost or damaged property;

(2) The cost to replace the lost or damaged property with other property:

(a) Of comparable material and quality; and

(b) Used for the same purpose; or

---

[1] Plaintiff's exhibit 1, Declaration of Brett Palmer, ¶ 5.

(3) The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new Property, the cost described in e.(2) above is limited to the cost which would have been incurred if the building had been rebuilt at the original Property . . .[2]

The Policy also contains a Code Upgrade, as follows:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

\*\*\*

**4. Additional Coverages**

\*\*\*

**e. Increased Cost of Construction**

(1) This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in e.(3) through e.(9) of this Additional Coverage.

(3) The ordinance or law referred to in e.(2) of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described Property and is in force at the time of loss.

\*\*\*

(6) The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less.

(7) With respect to this Additional Coverage:

---

[2] Defendant's exhibit 1, p. 18, ¶ G.3.

      (a) We will not pay for the Increased Cost of Construction:

        (i) Until the property is actually repaired or replaced, at the same or another Property; and

        (ii) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years . . .

      (b) If the building is repaired or replaced at the same Property, or if you elect to rebuild at another Property, the most we will pay for the Increased Cost of Construction, subject to the provisions of e.(6) of this Additional Coverage, is the increased cost of construction at the same Property.

          ***[3]

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This

---

[3] *Id.* p. 8, A.4.e.

requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

Landmark maintains that LC Pilots is not entitled to RCV of Cost Upgrade coverage for the Insured Property because the Insured Property have not been repaired or replaced. Landmark argues that under the terms and conditions of the Policy, LC Pilot's failure to repair or replace the Insured Property, "as soon as reasonably possible after the loss" precludes the recovery of RCV. Additionally, under the terms and conditions of the Policy, Landmark argues that even if actual repair or replacement is made as soon as reasonably possible, Landmark "will not pay more" than the lesser of the amount actually spent that is "necessary to replace the property" or the cost to replace the property with other property of "comparable material and quality." Landmark further argues that to the extent that LC

Pilots also seeks Code Upgrade coverage, such repairs or replacements must have been made within "two years" following the loss, which time period has expired.

Landmark suggests that the Insured Property have not been repaired and no replacements have been made since the dates of the alleged loss. LC Pilots dispute this and have provided summary judgment evidence that some temporary repairs have been made, such as replacing the ridge caps that blew off of the roofs, and replacing generators, all of which was damaged by the Hurricanes.[4] LC Pilots also asserts that it has been unable to make the necessary repairs and replacements because Landmark has failed to pay sufficient funds for the covered losses.

LC Pilots argues that the instant motion should be denied because there is a genuine issue of material fact regarding Landmark's bad faith adjustment of the LC Pilot's claims. LC Pilots informs the Court that Landmark has paid less than $20,000 for damage caused by the Hurricanes, and that it estimates its ACV damages to be in excess of $1,000,000.00.

Of significance, LC Pilots hired a public adjuster, Julie Ann Lubarsky, to inspect the property.[5] On April 9, 2021, she provided an estimate of the replacement cost value (RCV) of the building damage, which totaled $1,467,056.09.[6] Landmark received a copy of Ms. Lubarsky's estimate in early April 2021.[7]

After filing this lawsuit, the LC Pilots retained Jeffrey Major, an expert building consultant, to inspect the Insured Property and provide another estimate of the cost to

---

[4] Plaintiff's exhibit 1, Declaration of Brett Palmer, ¶ 13.
[5] Plaintiff's exhibit 1, Declaration of Brett Palmer, ¶ 11; Plaintiff's exhibit 3, Deposition of Landmark, pp. 130-32; Plaintiff's exhibit 2, Bates no. LNDMK 569-617.
[6] Id.
[7] Id.

repair. Mr. Major performed an independent assessment of the storm damage and reviewed Alfred Palma's quote of $1,492,952.79.[8] Mr. Major adjusted Alfred Palma's quote for coverage under the policy to an ACV of $1,283,755.74 with a recoverable depreciation of $55,397.05, totaling $1,339,152.79 RCV.22[9]

LC Pilots argues that is cannot be reasonably expected to make repairs in excess of $1,000,000.00, when Landmark has paid less than $20,000.00 on its claims. LC Pilots also informs the Court that Landmark's estimates failed to take into account that the Insured Properties are on an island, and thus all removals and deliveries would have to be made via water transport, such as a vessel, tug, barge, and/or boat. Finally, LC Pilots informs the Court that Landmark paid LC Pilots $19,866.16 in June 2022, almost two years, post storms.

The basis for Landmark's motion is that because LC Pilots has not made the repairs, it is not entitled to RCV, and likewise, LC Pilots is not entitled to proceeds for Code Upgrades two years after the loss, under the Policy. Landmark argues that because LC Pilots has failed to make the repairs, this Court should rule that LC Pilots is not entitled to RCV, and that until repairs are made and the associated invoicing and evidence of payment are provided to Landmark, the statutory time delay for bad faith does not even begin. Landmark does not mention that it has failed to make payments for ACV based on the estimates provided by LC Pilots.

---

[8] Plaintiff's exhibit 2, Declaration of Jeffrey Major, ¶ 18.
[9] *Id.*

It is a mystery to this Court, as to what world Landmark is operating. One could not reasonably expect an insured to make over a million dollars in repairs when its insurer has paid less than $20,000.00 to fund said repairs. Without determining the damage loss, a decision that will be made by a jury, the Court finds that LC Pilots has submitted sufficient summary judgment evidence as to a genuine issue of material fact for trial.

## **CONCLUSION**

For the reasons set forth herein, the Court will deny the Motion for Partial Summary Judgment.

**THUS DONE AND SIGNED** in Chambers on this 24th day of August, 2023.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**